IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:26-CR-23 |
| | ) | |
| TYLER VALENZIA, | ) | The Hon. Anthony J. Trenga |
| | ) | |
| Defendant | ) | Sentencing: November 18, 2026 |
| | ) | |

**UNITED STATES' POSITION ON SENTENCING**

The United States of America, by and through its undersigned counsel, hereby submits its position on the sentencing of Tyler Valenzia ("defendant"). The defendant has plead guilty to one count each of sexual exploitation of a minor, in violation 18 U.S.C. § 2251(a) and (e), and transportation of sexually explicit images of a minor, in violation of 18 U.S.C. § 2252(a)(1) and (b)(1). The applicable guidelines range has been correctly calculated in the Presentence Investigation Report ("PSR") as 292 to 365 months' imprisonment, with statutory maximum ranges of 30 years for sexual exploitation and 20 years for transportation. *See* Dkt. No. 57 (PSR), at Part D. For the reasons that follow, the United States submits that a sentence of 27.5 years is sufficient but not greater than necessary to effectuate the statutory sentencing factors under 18 U.S.C. § 3553(a). The Court should further impose a lifetime term of supervised release, forfeiture of the electronic device used in connection with the offense, and restitution and special assessments as set forth by statute.

**FACTUAL BACKGROUND**

Over the course of the four years leading up to his arrest, the defendant preyed upon at least four minor girls and raped an adult woman. He came to the attention of the United States

Naval Criminal Investigative Service (NCIS) on two separate occasions, as well as the Culver City Police Department, but he was undeterred in his pursuit of girls to exploit. In 2025, the defendant finally found a 14-year-old girl here in the Eastern District of Virginia whom he groomed to engage in various sex acts over four meetings in two different states, acts which he recorded. In the words of that victim's parents, she "now lives with fear." She "will spend years rebuilding what was damaged." "Peace. Trust. Safety. Time. Those were taken from her. And those are things no child should ever have to lose." The defendant's rape of MV1 was the culmination of at least four years of exploitation and destruction, and this Court should punish him accordingly.

**I.** **<u>March 21 – May 3, 2022: The Defendant Preys on MV3 (16 years old)</u>**

On March 21, 2022, the defendant first messaged MV3, a sixteen-year-old girl living in Tennessee at the time. *See* Government Exhibits 3A (Interview Report) and 3B (Chats). In reviewing the iPhone confiscated from the defendant at the time of his arrest, the FBI found sexually explicit images and one video of MV3. One image depicts a close-up shot of MV3's vagina, with her middle and ring finger resting on her vagina. The video, approximately 15 seconds in length, depicts a close-up of MV3's vagina. Her underwear is pulled to the side, and her index and middle finger digitally stimulate her clitoris and penetrate her vagina.

**II.** **<u>April 4, 2022 – March 31, 2023: The Defendant Preys on MV2 (16 years old)</u>**

On April 4, 2022, the defendant first messaged MV2, a sixteen-year-old girl living in Tennessee. *See* Government Exhibits 2A (Interview Report) and 2B/2C (Chats). The defendant immediately called her "gorgeous," "cutie," and "sweet." He told her that he is "from Maryland but . . . stationed in San Diego!" The defendant told MV2 that she should come visit, "I wanna meet you 😍[.]" He said that she is "super gorgeous 🤩 I would be all over you if you were

here 😝 [.]" On May 12, 2022, MV2 expressly told the defendant that she was sixteen; the defendant responded that "it doesn't change anything babe :)[.]" *See* Gov. Ex. 2B at BN 9962. On June 15, 2022, knowing that MV2 was a minor, the defendant expressly said that he would "love more videos," "Maybe some" of her "playing with [her] pussy." *Id.* at BN 9990.

## III. April 30, 2022: The Defendant Rapes the Wife of a Fellow Marine (AV)

On April 30, 2022, while the defendant was still in the United States Marine Corps, the defendant agreed to give AV a ride to a coworker's party because AV had been drinking. The defendant told AV that they should hang out in his barracks room. AV told the defendant that she was very intoxicated and did not want to have sex. In the defendant's barracks room, the defendant violently raped her. *See* Government Exhibit 5 (NCIS Reports). In particular, and consistent with the defendant's conversations with minor girls, AV reported that the defendant said he had a "pregnancy kink" and he was extremely interested in her lactating breasts. While no charges were brought due to "lack of probable cause," the complaint speaks for itself, particularly in light of the defendant's later conduct.[1]

## IV. May 30, 2023: The Defendant Preys on MV4 (17 years old)

In August 2023, NCIS received another complaint about the defendant, this time related to sexually explicit communications on SnapChat with a seventeen-year-old girl. *See* Government Exhibit 4 (NCIS Reports). The investigator documented the following conversation between the defendant and MV4:

**Valenzia:** *I'm gonna cum soon*

---

[1] The defendant also told MV1 about yet another sexual assault on an adult woman: "one day at a friends house the mother of his friend came home drunk. The friend was not attractive, but the mom was. [The defendant] sat and chatted with the mom for a while. He snuck into her room and started touching her in her sleep. When the mom started waking up, he hid under the bed. When she fell back to sleep, he snuck out of the room." *See* Government's Exhibit 1H (Summary of CAFI).

| | |
|---|---|
| **MV4:** | *ur still at that* |
| **Valenzia:** | *I need to cum* |
| **MV4:** | *then do it* |
| **Valenzia:** | *Okay I'm about to* |
| | *I wish i was cumming on your pretty little 17 year old face and tits* |
| **MV4:** | *that caught me off guard whattt* |
| **Valenzia:** | *You like it* |
| | *I love how young you are* |
| | *Do you have some bikini pics or something* |
| **MV4:** | *i don't actually,!!* |
| **Valenzia:** | *Can you go in a bathroom real quick* |
| **MV4:** | *which is ironic since i go swimming kinda often* |
| **Valenzia:** | *And show me your tits* |
| **MV4:** | *im walking* |
| **Valenzia:** | *Fuckkk* |
| **MV4:** | *yeaa im sorry* |
| **Valenzia:** | *I love your young body so much* |
| | *I wanna make you mine* |
| **MV4:** | *i mean im down sure* |
| **Valenzia:** | *Mmm really* |
| **MV4:** | *yaa* |
| **Valenzia:** | *You'll be my little girl?* |
| **MV4:** | *mhm* |
| **Valenzia:** | *I'll take care of you baby* |
| | *I'm such a lucky man to have you tbh* |
| | *You're every mans dream* |
| | *Are you really 17* |
| **MV4:** | *yes why* |
| **Valenzia:** | *That's so hot* |

MV4 reported to NCIS that the defendant sent her a video of himself masturbating and that he asked her for explicit photographs. In response, she sent one topless photograph of herself to the defendant.

## V. <u>2025: The Defendant Rapes and Films MV1</u>

On March 13, 2025, the defendant sent a direct message to MV1 on TikTok. *See* Government's Exhibit 1A (TikTok Chats). After talking for less than a day, the two began texting. *See* Government's Exhibit 1B (Start of text conversation). Almost immediately, MV1

specifically told the defendant that she was a minor and in high school, a fact that made the defendant more, not less sexually interested in her:

**Valenzia:** *I need to come there and make you mine*
**MV1:** *you don't even know me*
**Valenzia:** *Well that's why we are talking so we can get to know each other*
*You should send me that picture of you* 🥺
*Ooo we definitely need to FaceTime soon*
**MV1:** *you don't know how old I am sir*
**Valenzia:** *Wym??*
**MV1:** *what do YOU mean*
**Valenzia:** *Lol idk well I'm here cause were are trying to get to know each other more. I enjoy talking to you*
**MV1:** *i'm too young for you if you know what's good for you*
**Valenzia:** *Wait why??*
**MV1:** *i'm still in school* 😳 😳
**Valenzia:** *So what?*
**MV1:** *high school*
**Valenzia:** *Wtf* 😭 😭 *I thought you were older lol*
*Ohhh that makes sense on the voting thing* 😂 😂
**MV1:** *no you didn't lmfao*
*i'm not gonna tell. i still like you but i don't want to get you in trouble if i can help it*
**Valenzia:** *Aww I like you too you're really chill and I actually have so much fun talking to you*
**MV1:** *Loved "Aww I like you too you're really chill and I actually have so much fun talking to you"*
*and you're gorg so you'll have no problems finding someone else* 🙂‍↕️
**Valenzia:** *Maybe I want you*
**MV1:** *actually?*
**Valenzia:** *Of course what guy wouldn't? You're really pretty and really cool. It's easy to talk to you*
**MV1:** *are you sure??*
**Valenzia:** *Haha what do you mean? I think you're a really good person so far from what I've seen :)*
**MV1:** *i'm not going to tell but i'm worried you're gonna get in trouble??*
*i mean I was kind of hoping you'd say that but also omg*
**Valenzia:** *Well we aren't technically doing anything wrong. I feel like we already invested a decent amount of time into talking with each other*[2]

*See* Government's Exhibit 1C (text message excerpt).

---

[2] When the defendant says that they had "already invested a decent amount of time into talking with each other," it had been one day.

On March 20, 2025, MV1 expressly told the defendant that she was 14 years old, to which he responded that this was a "plus" because she would only get "hotter":

| | |
|---|---|
| **Valenzia:** | *That's crazy you're 5'2" 108 pounds at a 30 DD. I literally have found a gold mine* |
| | *Yeah you're not going anywhere!!!!* |
| **MV1:** | *except I'm 14* 🙂‍↕️🙂‍↕️ |
| **Valenzia:** | *I was literally about to say that* |
| **MV1:** | *you either ho* |
| **Valenzia:** | *Not gonna lie not trying to be weird but that's a plus since you look like that already. Just means you're gonna get hotter* |

*See* Government's Exhibit 1D (text message excerpt).

MV1 expressly told the defendant that she was a virgin, a fact that the defendant found particularly attractive. On April 13, 2025, the defendant flew from San Diego to Virginia to meet MV1 in person. The defendant told MV1, "*I'm gonna pick you up throw you on the bed and deflower you like i'm starving and you're the first meal I've had in weeks*." *See* Government's Exhibit 1E (text message excerpt), at BN 7535. On April 14, 2025, the defendant picked MV1 up from the Dulles Town Center mall in Sterling, Virginia and drove her to a nearby hotel in the Eastern District of Virginia. Once at the hotel, the defendant engaged in oral and vaginal intercourse with MV1. After about an hour, the defendant took MV1 back to the mall. Afterwards, the defendant and MV1 had the following conversation:

| | |
|---|---|
| **Valenzia:** | *I'm turned on now still thinking about it I want you again rn* |
| **MV1:** | *awwwe* |
| **Valenzia:** | *I never want to stop* |
| **MV1:** | *Loved "I never want to stop"* |
| **Valenzia:** | *You took it like such a good girl!* |
| **MV1:** | *Loved "You took it like such a good girl!"* |
| | *I tried!!* |
| **Valenzia:** | *I tried to be gentle* |
| | *It felt so good I wanted to go harder* |
| **MV1:** | *Girl if that was gentle I'm scared how hard you go* |
| **Valenzia:** | *You seemed to really enjoy it towards the end* |
| | *Lol girl that was nothing* |
| | *Does it feel any different there now* |

*Laughed at "Girl if that was gentle I'm scared how hard you go"*
**MV1:** *Yeah omg*
**Valenzia:** *Explain I'm so curious what's going through your head*
*What does it feel like*
**MV1:** *it isn't exactly painful but it's a little uncomfortable*
*and honestly everything feels so surreal*
**Valenzia:** *Loved "and honestly everything feels so surreal"*
*You had something inside you for the first itme*
**MV1:** *Don't regret it though!!*
*As long as i don't get pregnant*
**Valenzia:** *You're not lol*
*I came so much*
**MV1:** *I know!!*
**Valenzia:** *Just for you baby*

*****

**Valenzia:** *Omg you were so tight*
*How did it feel when u put it in*
*How did it feel when I put it in*
**MV1:** *It felt Likeeee*
**Valenzia:** *You were really wet for me*
*I could see it in your underwear*
**MV1:** *I don't know it felt very blunt idk*
*I haven't taken my meds lol*
*Not in a few days*
**Valenzia:** *For me?*
**MV1:** *for you!!*
**Valenzia:** *Good girl!* 😍
**MV1:** *lol*
**Valenzia:** *Your pussy was gripping me so tight*
*I could tell you really enjoyed it*
**MV1:** *parts of it I liked!! I did want to go harder at times but I was nervous to ask*
**Valenzia:** *Loved "parts of it I liked!! I did want to go harder at times but I was nervous to ask"*
*Aww I could have gone wayyy harder for you*
**MV1:** *certain angles felt better than others*
**Valenzia:** *It got hot as hell in the room I turned the AC on*
**MV1:** *Laughed at "It got hot as hell in the room I turned the AC on"*
**Valenzia:** *Towards the end when I was going faster and told you I was close I felt you get wetter and you seemed to like it when I called myself Daddy for you*
**MV1:** *Loved "Towards the end when I was going faster and told you I was close I felt you get wetter and you seemed to like it when I called myself Daddy for you"*
*you caught me*
**Valenzia:** *Daddy loves his little girl* 😋

*See* Gov. Ex. 1E at BNs 7621—7629.

In July 2025, MV1, still 14-years-old, went to Illinois to visit family. On July 7, 2025, the defendant flew from San Diego to Illinois to visit MV1. The defendant rented an Airbnb close to where MV1 was staying. For three nights, MV1 snuck out of the house; the defendant picked her up and drove her to the Airbnb. A few hours later, the defendant took MV1 back to where she was staying. While at the Airbnb, the defendant engaged in oral and vaginal intercourse with MV1 on multiple occasions.

For example, after the defendant and MV1 spent the night of July 8 together, they had the following exchange:

**Valenzia:** *We had so much fun!!!*
**MV1:** *we did omg*
**Valenzia:** *I couldn't get enough of you*
**MV1:** *I was praying we'd do it a third time I wanted it so bad* 😭 😭
**Valenzia**: *Loved "I was praying we'd do it a third time I wanted it…"*
*Haha we did!!*
*You're starting to like it*
**MV1:** *I've always liked it!!! It just hurts!!*
*but i'll take it*
**Valenzia:** *Did it hurt less each time?*
**MV1:** *hmmmm*
*I don't know!!! But each time we did it I wanted it more so it felt better for Sure*
**Valenzia:** *haha good!*
*Your training is working*

*See* Gov. Ex. 1F at BNs 3993—3994.

Later in the day, MV1's period started:

**MV1:** *I might have just started my period wait??*
**Valenzia:** *No way really??*
**MV1:** *I'll check omg*
**Valenzia:** *Bruhhh*
*Why did I buy a plan b* 😭
**MV1:** *you were just being safe!!*
*this could be from tearing too I'm not sure*

**Valenzia:** *I wonder if I can return it*
*Lmao*
**MV1:** *lol omg* 😭
*my period!!!!*
**Valenzia:** *You got it??*
**MV1:** *good news is it's really not heavy*
**Valenzia:** *That's great!*
*I'm gonna get ready to leave*
**MV1:** *okay!!!!*
**Valenzia:** *Guess I can return this*
**MV1:** *now you'll cum in me right??* 😳↕️😳↕️
**Valenzia:** *Idkkkk*

*See* Gov. Ex. 1F at BNs 4019—4021.

After the defendant and MV1 spent the night of July 9 together, they had the following exchange:

**MV1:** *thank you so much for tonight!!!!*
*and for listening when I said it hurt too bad :(*
**Valenzia:** *Of course it was so fun!!*
*Loved "and for listening when I said it hurt too bad :("*
*Of course baby I don't wanna hurt you*
**MV1:** *I know!!! you're the sweetest and I'm so lucky to have you!!!*
**Valenzia:** *Loved "I know!!! you're the sweetest and I'm so lucky to…"*
*Aww*
**MV1:** *I loved you so much!!*
**Valenzia:** *You're just not used to it yet haha*
**MV1:** *For sure :(((*
**Valenzia:** *It's probably torn a little*
**MV1:** *I think so!!! It just feels really tender now*
**Valenzia:** *Yeah for sure*
*It will get better*
**MV1:** *I'll make it better by the time I see you I promise*
**Valenzia:** *You're so tiny and so tight it feels so good*
*Loved "I'll make it better by the time I see you I promise…"*
**MV1:** *Loved "You're so tiny and to tight it feels so good"*
*I'm yours!! just use me*
**Valenzia:** *It's crazy how I fit inside you*

*****

**Valenzia:** *I'm so horny rn I need you*
**MV1:** *Loved "I'm so horny rn I need you"*
*don't do anything let me take care of it!!*
**Valenzia:** *Ughhh*
*I'm watching our videos*

*i liked having it in my mouth!!*
**Valenzia:** *That's hot*

*See* Gov. Ex. 1F at BNs 4026—4045.

On July 10, 2025, the defendant took a picture of himself in the Airbnb bed with MV1. He also recorded himself and MV1 engaged in sexual intercourse. One video dated July 9, 2025, at approximately 11:24 PM, is 27 seconds long and depicts the defendant's erect penis repeatedly penetrating MV1's mouth. MV1's face is clearly visible. The defendant is seen nude from the waist to the upper thighs. Another video dated July 9, 2025, at approximately 11:41 PM, is 11 seconds long and depicts the defendant's erect penis repeatedly penetrating MV1's vagina as she is on her hands and knees facing the other direction. Distinct aspects of the Airbnb rental are visible in the background of both videos, including the bedding.

During the course of their conversations, the defendant asked for nude images and MV1 sent images of her bare chest. Then, on August 16, 2025, the defendant and MV1 had the following exchange in which he asked her to produce sexually explicit material:

**Valenzia:** *I'm horny* 😭

*****

**MV1:** *I'm sorry!!!! I can send more pics!!*
**Valenzia:** *You have more?!?*
**MV1:** *I can make some!*
**Valenzia:** *But you're with your friend*
*I'm in bed touching myself to your pics*
**MV1:** *I'm in my room!!! I'm about to go back out I'm just changing out of my Bikini!*
*Loved "I'm in bed touching myself to your pics"*
**Valenzia:** *Is your friend there??*
**MV1:** *No but she's about to be!*
**Valenzia:** *Nooooo*
*Ft me real quick*
**MV1:** *I can't call but I can send pics!!*
**Valenzia:** *Ughhhh*
*I wanna see you*
*I'm so horny*
**MV1:** *I knowww :(*

| | |
|---|---|
| | *I'll send one and show you!!* |
| **Valenzia:** | *I wanna cum baby* |
| | *I wish I could put it inside you* |
| **MV1:** | *[An image of MV1 sitting down on a bed visible from her upper thighs to her shoulders. MV1 is wearing a paisley red bikini top and white bikini bottoms. Her nipples are slightly visible in the bikini top.]* |
| **MV1:** | *I know :(* |
| | *You will soon!!* |
| | *I'm gonna see you!!!* |
| **Valenzia:** | *Ugh you should let me call you* |
| | *You're so hot* |
| **MV1:** | *I can't!!! I want so so bad!!!!* |
| **Valenzia:** | *Maybe later??* |
| **MV1:** | *Yes later!!* |
| **Valenzia:** | *I wanna see you play with you play with yourself* |
| **MV1:** | *[5 images of MV1 naked from the navel to the neck with the focus on her exposed breasts.]* |
| **MV1:** | *how about these??* |
| | *I can try to take a pick down there!!* |
| **MV1:** | *[An image of MV1 naked from the navel to the neck with the focus of the photo on her exposed breasts.]* |
| | *and here!* |
| **Valenzia:** | *Fuck yes baby* |
| | *You're gonna make me cum* |
| **MV1:** | *you want me to do this??* |
| | *Loved "you're gonna make me cum"* |
| **Valenzia:** | *Yes!* |
| **MV1:** | *okay!!!!* |
| **Valenzia:** | *I'm so ready for you* |
| | *Loved an image* |
| | *Loved an image* |
| | *When did you take these pics* |
| **MV1:** | *[A close-up image of MV1's vagina. Her middle and ring finger are inserted into her vagina.]* |
| **MV1:** | *how's this?* |
| **Valenzia:** | *Loved an image* |
| | *Fuckkkk* |
| | *Yes so good baby* |
| **MV1:** | *a bit ago I was waiting for something like this when I could call!!!* |
| **Valenzia:** | *Did you just take that??* |
| | *Loved "a bit ago I was waiting for something like this wh…"* |
| | *Do you have more of your pussy* |
| **MV1:** | *Loved "Did you just take that??"* |
| | *Yeah!!* |
| | *I can take another!!* |
| **Valenzia:** | *Show me without your fingers in it do I can see all of it* |

| | |
|---|---|
| | *Show me without your fingers in it so I can see all of it* |
| **MV1:** | *[A close-up image of MV1's vagina. Her index finger and middle/ring finger are pulling apart her labia to expose her vagina.]* |
| **MV1:** | *how about this???* |
| **Valenzia:** | *Loved an image* |
| | *Ugh yesss* |
| **MV1:** | *It's so small omg how are you able to fit in there???* |
| **Valenzia:** | *Your pussy looks ready for my cum!!!* |
| | *Loved "It's so small omg how are you able to fit in there…"* |
| | *I loved pumping my cum into my little girl* |
| **MV1:** | *Loved "I loved pumping my cum into my little girl"* |
| | *It's my job to take it 💕 💕 you're my daddy!!* |
| **Valenzia:** | *Loved "It's my job to take it 💕 💕 you're my daddy!!"* |
| | *You're so young to be having so much of my cum inside you* |
| **MV1:** | *Loved "You're so young to be having so much of my cum inside you"* |
| | *I'm so young because I was made for you!!* |
| **Valenzia:** | *You're gonna be able to make me do many babies* |
| | *You're gonna be able to make me so many babies* |
| **MV1:** | *Loved "You're gonna be able to make me so many babies"* |
| | *All of them!!!* |
| | *I'm young and fertile for you because that's what you want 💕 💕 I'm meant for you!!* |
| **Valenzia:** | *Loved "I'm young and fertile for you because that's what…"* |
| | *Ugh yes baby 😋 ❤️* |
| | *I just came :)* |

*See* Government's Exhibit 1G (text message excerpt).

MV1 confirmed these facts in her Child Adolescent Forensic Interview (CAFI). *See* Gov. Ex. 1H. She described what the defendant did as "rape." She said that the defendant made her, "feel special." He told her that he never flew out to see a girl before and that she was everything he wanted. He said he wanted to marry her. MV1 confirmed that the defendant took a picture of her while she was naked on Facetime, and he did so without her permission. She "freaked out" and asked the defendant to delete it, but he refused.

MV1 also confirmed that the defendant was, "obsessed with taking her virginity." When they first met up in April 2025, in the car on the way to the hotel, the defendant grabbed MV1's chest and, she "freaked out." She "realized I was not ready to be touched that way." However,

the defendant insisted. During this first encounter, MV1 described the defendant's actions as follows:

> VALENZIA then came back up, took his pants off, and looked at her as he started to raping her and taking virginity. It was slow and hurt. It felt like a dull knife was being shoved into her. She asked him to stop because it hurt but he kept going. He did not respond to her request to stop so she started to push him away. She had her hand on his stomach to try and get him to stop, but she described the push as "not very hard." He kept going faster and kept kissing her. She did not know how to kiss him back, so she laid there and let him do it.
>
> VALENZIA stopped every few seconds and told her to open her legs because she kept closing them. He pushed against her inner thighs to make her open her legs. She kept pulling away from him because it hurt. She did not say much other than "it hurt." He pulled out before he finished on her stomach. "Stuff fell on my stomach;" it was white, thick, and hot. [redacted]. does not "know why I let him do that." She could have stopped it if she made a big deal about it.

When the defendant and MV1 met in Illinois in July 2025, the defendant showed MV1 videos of the first time they were together that she did not even know he took. He also put her, "into a lot of positions, . . . A lot of them hurt[.]" On another night, the defendant took a video of MV1 giving him oral sex. When she tried to cover her face using her hands, the defendant got mad and pulled her hands down. He ranted about how it, "pisses him off" when she does that.

The defendant told MV1 that if she ever told someone about him, "he would kill himself." Sometimes when he got angry with her, he talked about strangling her or wanting to kill her. He would say "I want to strangle you right now," and she felt that he could. He would tell her things like, "no other guy would really want me," no other guy would want to be with someone who had done the things she had done with someone older. He told her that her "purpose" was "for having sex and making babies."

## VI. <u>The Defendant is Arresting Traveling to Meet MV1</u>

The FBI took custody of MV1's phone and an agent began to chat with the defendant as MV1. On January 19, 2026, the defendant rented a car and traveled from Glen Burnie,

Maryland, to Dulles Town Center mall located in Sterling, VA, with the intent to meet with MV1. Once the defendant arrived, he was placed under arrest, and FBI agents seized his iPhone.

The defendant's iPhone contained text message communications with MV1, and sexually explicit images and videos of MV1, including those described above. The defendant's iCloud account also contained approximately 18 images of MV1. For example, on May 16, 2025, there are two images time stamped at 3:27 PM and 3:30 PM, which depict MV1 sitting on the floor naked with her legs spread apart, her fingers resting on her vagina. There is another image dated August 14, 2025, time stamped 6:52 PM, which depicts MV1 naked from the neck to the upper thigh. She is holding the bottom of her breasts with her hands; her legs are slightly spread apart, and the top of her vulva is visible. All images appear to be screenshots from FaceTime.

In total, law enforcement found approximately 1,070 images and 515 videos consistent with child sexual abuse material and/or child erotica on the defendant's iPhone.

**STATUTORY PENALTIES AND GUIDELINES CALCULATIONS**

Production of child pornography carries a minimum term of 15 years' imprisonment with a maximum term of 30 years' imprisonment. *See* 18 U.S.C. § 2251(a) and (e). Transportation of child pornography carries a minimum term of 5 years' imprisonment with a maximum term of 20 years' imprisonment. *See* 18 U.S.C. § 2252(a)(1) and (b)(1). Following any term of imprisonment, both offenses require that the defendant be placed on supervised release for a term of at least five years up to life. *See* 18 U.S.C. § 3583(k).

**I. Combined Adjusted Offense Level**

As the Court is aware, although the Sentencing Guidelines are advisory, sentencing courts "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). Thus, at sentencing, a court "must first calculate the

Guidelines range" applicable to the defendant. *Nelson v. United States*, 555 U.S. 350, 351 (2009); *see also Gall v. United States*, 552 U.S. 38, 49-50 (2007). Here, the PSR correctly calculated the offense level and adjustments, as follows:

| **Guideline** | |
|---|---|
| Base offense level (U.S.S.G. § 2G2.1(a)) | 32 |
| The material involved a minor who had attained the age of 12 years but not the age of 16 years (U.S.S.G. § 2G2.1(b)(1)(B)) | +2 |
| The offense involved the commission of a sexual act or sexual contact (18 U.S.C. § 2G2.1(b)(2)(A)) | +2 |
| For the purpose of producing sexually explicit material, the offense involved the use of a computer or an interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct (18 U.S.C. § 2G2.1(b)(6)) | +2 |
| | 38 |
| The defendant is a repeat and dangerous sex offender against minors (U.S.S.G. § 4B1.1(a)) | +5 |
| Total Offense Level | 43 |

PSR at ¶¶ 50-71. The parties stipulated to all enhancements and the defendant has not objected to the calculation.

The government agrees that the defendant has assisted authorities in the investigation and prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. U.S.S.G. § 3E1.1(b). Accordingly, the United States moves this Court to apply an additional one-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b).

The defendant's criminal history score is zero, resulting in a Criminal History Category I. PSR at ¶ 101. Based on a total offense level of 40 and a Criminal History Category I, the defendant's Guidelines sentencing range is 292-365 months' incarceration. *Id.* at Part D.

## SECTION 3553(a) FACTORS

After calculating the Guidelines range, a sentencing court must then consider that range, as well as the sentencing factors set forth in 18 U.S.S.C. § 3553(a) and determine a sentence that is appropriate and reasonable for the individual defendant. *Nelson*, 555 U.S. at 351; *see also United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. As explained below, consideration of these factors suggests that a sentence of at least 27.5 years is appropriate in this case.

### I. The Defendant's Known Conduct Over a Four-Year Span is Extremely Serious.

As described in detail above, the defendant's online interactions with MV2, MV3, and MV4; his requests for sexually explicit material from MV2 and M4; and his rape of AV all culminated in his most successful known exploitation in 2025, that of MV1. This escalating course of conduct began in April 2022, when the defendant was still in the military, when he targeted MV3, a sixteen-year-old girl, online and obtained sexually explicit images from her. Later that same month, the defendant targeted MV2, another sixteen-year-old girl, and he again explicitly asked for sexually explicit images of her. And later that same month, the defendant apparently raped the wife of a fellow marine. He somehow avoided charges or consequences to

his military career related to that assault. About one year later, in May 2023, while he was still in the military, the defendant targeted a seventeen-year-old girl over Snapchat. He sent her an obscene video of himself and asked her for explicit photographs. Again, he somehow avoided charges or consequences to his military career related to this conduct.

Beginning in March 2025, the defendant finally found a minor whom he could literally get his hands on. He enticed and groomed MV1 for nine months. She was a fourteen-year-old girl who knew nothing about love, sex, or relationships. She saw a good-looking guy on social media and had no idea what that man was capable of. One need only look at her statement to know that MV1 had no conception of what was happening to her – MV1 did know what semen was, calling it "stuff"; she talked about having sex "the normal way"; and she "was uncomfortable using certain language to describe 'it,' so she wrote it down on a sheet of paper." Gov. Ex. 1H. These are the words of a child describing a man raping her.

And rape MV1 the defendant unquestionably did. In her interview, MV1 described the defendant grabbing at her chest and freaking out because "[s]he realized she was not ready to be touched that way." Gov. Ex. 1H at BN 2020. When the defendant penetrated her for the first time, MV1 described it "like a dull knife was being shoved into her"; she asked him to stop and tried to push him off, but "[h]e kept going faster." Gov. Ex. 1H at BN 2021. The defendant had to keeping stopping to tell "her to open her legs because she kept closing them"; the defendant had to "push[] against her inner thighs to make her open her legs"; and she "kept pulling away from him because it hurt." *Id.* These are the words of a child describing a man raping her.

Even setting aside that MV1 was too young to ever consent, her interactions with the defendant could in no way be characterized as "consensual." The defendant took sexually explicit photographs and videos of MV1 without her knowledge or permission, and he refused to

delete them when she asked him to do so. Gov. Ex. 1H at BNs 2019, 2022. When MV1 tried to cover her face to hide it in the sexually explicit images and videos he was capturing, the defendant "got mad and pulled her hands down. He ranted about how it pisses him off when she does that." Gov. Ex. 1H at BN 2023. The defendant threatened to kill himself if MV1 ever told someone about him, and he threatened to strangle her. Gov. Ex. 1H at BNs 2025-26. These are the words of a child describing abuse although she has not yet come to understand what abuse is.

Only now it seems has MV1 started to come to terms with the sexual and emotional abuse and manipulative nature of the defendant's interactions with her, something she may have to grapple with for the rest of her life. *See* PSR at 33 (victim impact statement). "Long-term studies" confirm that "sexual abuse is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional and sexual development in ways in which no just or humane society can tolerate." *United States v. Irey*, 612 F.3d 1160, 1207 (11th Cir. 2010) (en banc) (collecting authority). "When child pornography is produced in conjunction with the sexual abuse of children, . . . the harm to the child victims is magnified and perpetuated." *Id.* at 1208. The Fourth Circuit has long held that "child pornography crimes are grave offenses warranting significant sentences." *United States v. Johnson*, 242 F. App'x 7, 11 (4th Cir. 2007).

## II. <u>The Defendant Is a Danger to the Community, and It Must be Protected.</u>

A significant sentence is necessary in this case to deter the defendant and others from engaging in this conduct in the future.

With respect to specific deterrence, the risk the defendant poses to children is enormous. The defendant is a young man who only needed a cell phone to exploit numerous children and cause potentially lifelong harm. He used social media and status as a fitness and lifestyle "influencer" to find and further entice his victims. He has a clearly expressed

preference for underage girls – he told MV2 that "it doesn't change anything babe :)" when she told him she was sixteen; after confirming that MV4 was "really 17," the defendant responded, "That's so hot"; and it was a "plus" for the defendant that MV1 was 14 because she would only get "hotter," "I have literally found a gold mine." The defendant was undeterred by his various brushes with NCIS and local law enforcement related to AV and MV4, even though they could have resulted in criminal charges, a dishonorable discharge from the military, and/or loss of benefits as a result. He poses a continuing risk to children anytime he has access to them, including through a phone or a computer.

The defendant's ongoing sexual interest in children and disregard for their wellbeing and the law all indicate that he has a high chance of recidivism and hands-on offending in the future. In fact, "[s]tudies and reports in this field are consistent with what judicial decisions show: pedophiles who have sexually abused children are a threat to continue doing so, and age does not remove the threat." *United States v. Irey*, 612 F.3d 1160, 1214 (11th Cir. 2010) (citing various studies and reports); *see also United States v. Allison*, 447 F.3d 402, 405–06 (5th Cir. 2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders."). A sentence of 27.5 years would protect the most vulnerable members of society—children—from the defendant's conduct.

General deterrence, too, is especially important in cases like this one where the defendant used his social media presence to target minors across the country. In recent years NCMEC has observed an uptick in the number of online exploitation cases. In 2025, NCMEC reported having received 21.3 million reports of suspected child sexual exploitation. *See* 2025 CyberTipline Report (available at: https://www.missingkids.org/content/dam/missingkids/pdfs/2025-cybertipline-report.pdf). The

Report detailed "a staggering increase in the number of reports the CyberTipline received related to the online enticement of children for sexual acts[.]" *Id*. at 9. Of the more than 21 million CyberTipline Reports submitted in 2025, nearly all of them were submitted by Electronic Service Providers, such as Snapchat. *Id*. at 15. And of the 1.4 million reports specifically concerning online enticement in 2025, there were "800 reports in which an offender traveled to meet a child in person and more than 80,000 reports concerning sextortion." *Id*. at 9. In short, social media applications, including Snapchat, Instagram, and TikTok, are being used by offenders to victimize children and these crimes are exploding in number.

The defendant and those who think like him need to understand that they risk lengthy prison sentences for this conduct. The sentence in this case must constitute a loud and clear warning to potential sexual offenders that severe consequences will result from such heinous acts. Indeed, "the deterrence objective of sentencing is 'particularly compelling in the child pornography context.'" *Irey*, 612 F.3d at 1211 (citation omitted). "[I]mposing a lighter sentence on one convicted of a child pornography offense 'tends to undermine the purpose of general deterrence, and in turn, tends to increase (in some palpable if unmeasurable way) the child pornography market.'" *Id*. (citation omitted); *accord United States v. Garthus*, 652 F.3d 715, 721-22 (7th Cir. 2011); *see also Osborne v. Ohio*, 495 U.S. 103, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand.").

## SUPERVISED RELEASE, RESTITUTION, & FORFEITURE

### I. A lifetime of supervised release is appropriate for such a dangerous defendant.

The Court must also determine the appropriate term of supervised release at sentencing. "Supervised release . . . is not a punishment in lieu of incarceration." *United States v.*

*Granderson*, 511 U.S. 39, 50 (1994). Instead, it "fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Under 18 U.S.C. § 3583(k), the authorized term of supervised release here is at least five years and up to life. This five-year mandatory minimum term reflects a heightened concern for recidivism among sex offenders and the need for supervision over time. *See, e.g.*, Lifetime Consequences for Sex Offenders Act of 2002, H.R. Rep. No. 107–527 at 2 (2002) ("[S]tudies have shown that sex offenders are four times more likely than other violent criminals to recommit their crimes [and that] . . . the recidivism rates do not appreciably decline as offenders age"); H.R. Conf. Rep. No. 108-66, at 49–50 (2003) (discussing how amendment to 18 U.S.C. § 3583(k) "responds to the long-standing concerns of Federal judges and prosecutors regarding the inadequacy of the existing supervision periods for sex offenders . . . whose criminal conduct may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison"). Notably, the Guidelines recommend a lifetime term of supervised release for sex offenders, *see* U.S.S.G. § 5D1.2(b) (Policy Statement), and the Fourth Circuit has observed that § 3583(k) and 5D1.2(b) jointly, "reflect[] the judgment of Congress and the Sentencing Commission that a lifetime term of supervised release is appropriate for sex offenders in order to protect the public." *United States v. Morace*, 594 F.3d 340, 351 (4th Cir. 2010) (quotation marks and citations omitted).

Here, the defendant has proven himself dangerous to any minor to whom he can gain access, whether in person or online. He has an obvious, demonstrated sexual interest in children that he is motivated to gratify no matter the risks. Therefore, the United States believes that it is appropriate to impose a lifetime term of supervised release with the conditions of supervision

contemplated under 18 U.S.C. § 3583(d) and U.S.S.G. § 5D1.3(d)(7) for sex offenders required to register under the Sex Offender Registration and Notification Act.

## II. Restitution

Pursuant to 18 U.S.C. §§ 2259 and 3663, the defendant must pay restitution in the full amount of the victim's losses as those losses are defined by Section 2259(c)(2). *See also Paroline*, 572 U.S. at 458 ("[A] court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses."). The "full amount of the victim's losses" includes "any costs incurred, or that are reasonably projected to be incurred in the future, by the victim . . . including" "medical services relating to physical, psychiatric, or psychological care." Section 2259(c)(2)(A). Here, MV1 has already been reimbursed by the Virginia Victim's Fund, which has requested restitution in the amount of $4800. The bases for that request included in the attachment to the PSR, and the United States asks that the Court grant the request.

Furthermore, counsel for the government has been informed that MV1 will incur additional costs for the 12 remaining therapy sessions that the Virginia Victim's Fund reimburses for, at a rate of $200/hour, once a week. After that, MV1's therapy is expected to continue. The government expects to receive a letter from MV1's therapist estimating costs of future therapy. In the event that the Court is not in a position to make a restitution finding at the time of sentencing, the government will seek to continue the matter of restitution for 90 days in order to finalize that request.

## III. Forfeiture

The parties previously filed a consent order of forfeiture, and the United States asks that the Court enter the final such order at sentencing.

## CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court impose a term of at least 27.5 years' imprisonment, a lifetime of supervised release, a $200 special assessment pursuant to 18 U.S.C. § 3013, and restitution of an as yet undetermined amount.

Respectfully Submitted,

Todd W. Blanche
Acting Attorney General

By: /s/
Laura D. Withers
Stefanie A. Schwartz
Assistant United States Attorneys